# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CR-22-253-PRW |
| ALEXANDER WILLIAM SANTIAGO, | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Alexander William Santiago's Motion to Suppress (Dkt. 23), seeking to exclude evidence obtained from a search of his cell phone. For the reasons that follow, the Court **DENIES** the Motion (Dkt. 23).

### *Background*

This case arises out of an alleged relationship between Defendant Santiago and a minor child (GP)—twenty-five and fourteen years old respectively. On July 14, 2021, GP's mother contacted state law enforcement regarding her missing daughter. The mother suspected GP was with Santiago. One day earlier, GP's mother approached Santiago at her home about pictures he allegedly sent to GP on Snapchat, which depicted Santiago and GP in bed together.[1]

Law enforcement called Santiago, who admitted GP was with him and agreed to take GP to law enforcement. Upon her return home, GP told her mother that Santiago made

---

[1] GP's mother told law enforcement about this encounter and the Snapchat communications two days prior to Santiago's arrest. *See* Ex. 2 (Dkt. 23), at 1.

1

her take three pregnancy tests, all of which came back positive. The next day, GP told forensic interviewers that Santiago was her "boyfriend," that they were "in love," and that they previously had sexual intercourse "on more than one occasion."

One day later, law enforcement arrested Santiago outside his home. Body worn cameras recorded the encounter. When officers approached to conduct the arrest, Santiago had just returned home and was standing next to a truck he had been driving. There were two officers at the scene, Lieutenant Travis Dinwiddie and Deputy Jake Davis. Deputy Davis approached Santiago, handcuffed Santiago, and began to search his person. While the search of Santiago's person was ongoing, Lieutenant Dinwiddie placed a call to report Santiago's arrest and confirm the specific charges against him. Santiago was told that he would be charged with rape and lewd and lascivious acts to a minor. Deputy Davis's search quickly revealed Santiago's iPhone. He then removed the iPhone from Santiago's person and placed it on the side of the truck.[2]

Santiago's father, Raymond, was also at the scene. He immediately began cooperating with law enforcement. As Deputy Davis began to ready Santiago to be moved to the police vehicle, Deputy Davis took Santiago's wallet and iPhone off the truck and placed the wallet back into Santiago's pocket. After a brief conversation about what to do with the phone, Raymond told the officer that he would take the phone, and took it from Deputy Davis's outstretched hand. Deputy Davis then handed Santiago's iPhone to Raymond. As soon as Raymond took the iPhone (and while he was still standing right next

---

[2] Deputy Davis also took Santiago's wallet out of his back pocket.

2

to Deputy Davis, Lieutenant Dinwiddie and Santiago), Lieutenant Dinwiddie said, "hang on one second" and placed a second call to another law enforcement member. Lieutenant Dinwiddie asked the person on the other end of the line "Do you want us to get his phone for you for the search warrant?" Simultaneous to this question, and after Lieutenant Dinwiddie said "hang on a second," Raymond walked a few feet away from Santiago and placed the iPhone in the front seat of the truck, with the door left open. Presumably acting on a "yes" answer to his question, Lieutenant Dinwiddie instructed Deputy Davis to "go ahead and get his phone." Deputy Davis walked a few feet to the truck, reached in the open door, and grabbed the iPhone from the front seat. The entire encounter—from the moment Raymond took Santiago's iPhone to when Deputy Davis retrieved it from the truck—lasted (at most) a total of twenty to twenty-two seconds.

After the arrest, state law enforcement received a warrant to search Santiago's iPhone. When state officials searched the phone, they allegedly discovered child pornography and referred the case to federal law enforcement. A federal agent later obtained a federal warrant to search the iPhone for evidence of possession of child pornography. The federal search allegedly uncovered hundreds of images and videos of child pornography.

A federal grand jury returned a two-count indictment against Santiago, charging him with receipt and possession of child pornography. Alleging that both the seizure and search of his phone were inconsistent with the Fourth Amendment, Santiago filed a motion to suppress the evidence uncovered from the iPhone. The Court held a hearing on the motion at which both parties were given the opportunity to introduce evidence. Both parties

agreed that there were no material facts in dispute and that no evidentiary hearing was needed. After argument on the legal questions presented, the matter was taken under advisement.

## *Discussion*

The Court first addresses the seizure of Santiago's iPhone and then turns to the searches of the iPhone's contents.

*I.     Seizure of Santiago's iPhone*

Santiago does not challenge the lawfulness of his arrest. Nor does he appear to challenge the officer's search of his person that resulted in finding the iPhone.[3] Instead, he argues that while both the seizure and search of his person were lawful, the seizure of his iPhone was not because in his view there was no probable cause to believe that the phone or its contents were evidence. Although law enforcement did not have a warrant to seize the iPhone, the United States argues that the seizure was justified either (1) as a seizure incident to arrest or (2) under the automobile exception.

---

[3] While there can often be a dispute over "the permissible area beyond the person of the arrestee which such a search may cover," there is little doubt as to the "unqualified authority of the arresting authority to search the person of the arrestee." *United States v. Robinson*, 414 U.S. 218, 225 (1973); *see also United States v. Rabinowitz*, 339 U.S. 56, 60 (1950) ("[N]o one questions the right, without a search warrant, to search the person after a valid arrest. The right to search the person incident to arrest always has been recognized in this country and in England."), *overruled on other grounds by Chimel v. California*, 395 U.S. 752 (1969); *Weeks v. United States*, 232 U.S. 383, 392 (1914) (noting "the right on the part of the government always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime").

### A. *Seizure Incident to Arrest*

The seizure of Santiago's iPhone was justified as a valid seizure resulting from a search incident to arrest. While "[n]ot every [seizure] 'is acceptable solely because a person is [arrested],"[4] the Fourth Amendment provides law enforcement with wide latitude to "search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."[5] To seize an item incident to arrest, the seizure must occur simultaneously with the arrest, the item must be within the immediate control of the arrestee, and there must be probable cause to believe that the item is evidence relevant to a crime.

Here, the officers seized Santiago's iPhone during the initial search of Santiago's person upon his arrest. At that time, law enforcement "meaningful[ly] interfere[d] with [Santiago's] possessory interest"[6] in the iPhone and deprived Santiago of dominion over and control of the iPhone.[7] That seizure was simultaneous to Santiago's arrest, and being within Santiago's pocket, the iPhone was within his immediate control. Santiago argues that because his father temporarily took the iPhone and sat it down a few feet away on the seat of the pickup truck, the iPhone was no longer within Santiago's immediate control. But there is no dispute that the officers seized Santiago's iPhone when they initially took

---

[4] *Riley v. California*, 573 U.S. 373, 392 (2014) (quoting *Maryland v. King,* 569 U.S. 435, 463 (2013)).

[5] *Chimel*, 395 U.S. at 763.

[6] *United States v. Hill*, 805 F.3d 935, 937 (10th Cir. 2015).

[7] *Horton v. California*, 496 U.S. 128, 133 (1990).

5

the iPhone off his person.[8] At no point did Santiago regain control or possession over the iPhone. And the officers did not meaningfully lose control over the iPhone for the brief period it was in the hand of Santiago's father.[9] Thus, the seizure of Santiago's iPhone was simultaneous to his arrest, and the iPhone was in his immediate control when seized.

Additionally, the officer's had probable cause to believe the iPhone contained evidence of a crime. "[T]he relevant question [for probable cause] is whether there was a substantial probability—something more than a bare suspicion—that the . . . property was involved in a crime."[10] Here, based on the facts and circumstances known to law enforcement, there was a substantial probability that Santiago's phone was involved in the crimes the officers were then arresting him for—rape and lewd and lascivious acts to a minor. To start, law enforcement had probable cause to believe that Santiago was engaged

---

[8] At the hearing on this motion, Santiago's counsel agreed that officers seized the iPhone when they took it off Santiago's person. *See also* Def.'s Suppl. Br. (Dkt. 37), at 1 ("The Court asks 'whether the relevant seizure was when the officer removed the iPhone from Santiago's person.' Upon closer analysis, the correct answer is actually 'yes.'").

[9] The iPhone was out of Deputy Davis's hands for less than twenty-two seconds. And just as the iPhone left Deputy Davis's hand, Lieutenant Dinwiddie said, "hang on one second," and asked the person on the other end of the line "Do you want us to get his phone for the warrant?" "To maintain possession, the possessor need not necessarily remain in continuous control," but they "must communicate an intent to maintain control over the thing." Restatement (Fourth) of Property § 1.2.1.1 (Am. L. Inst. 2021). Lieutenant Dinwiddie's statements provide objective evidence that the officers (who had already taken physical possession of the iPhone) maintained possession by communicating an objective intent to maintain control over the iPhone.

[10] *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017) (internal citation & quotation marks omitted). As Santiago's counsel conceded at the hearing on this motion, probable cause is based on the "collective knowledge of law enforcement at that time."

in a sexual relationship with GP.[11] And importantly, law enforcement had probable cause to believe that Santiago communicated with GP about that relationship via Snapchat, an app commonly used on cell phones.[12] It was therefore substantially probable that Santiago's iPhone had evidence related to Santiago and GP's illegal sexual relationship and that his phone was involved in the crimes then being alleged.

Santiago's argument to the contrary is unconvincing. Santiago suggests that he could have used some other phone or device to communicate with GP on Snapchat (or that there was no way for the officers to know that he used this particular device), and that this undermines the seizure of his phone. But there is no requirement that the officers have to be certain that the phone seized was the same device used in the offense.[13] Instead, where, as here, law enforcement knew that Santiago's iPhone was the type of device "commonly used" to communicate via Snapchat, there was a substantial probability that the phone held evidence of a crime.[14] In fact, as one district court in this circuit recognized, "courts have routinely found agents had probable cause for the warrantless seizure of electronic devices

---

[11] Santiago all but concedes this point by not challenging the lawfulness of his arrest. Even without that concession, law enforcement had the testimony of GP's mother and GP's own admission that she and Santiago had sexual intercourse on more than one occasion.

[12] Specifically, law enforcement had testimony from GP's mother—given two days prior to Santiago's arrest—that she had a heated discussion with Santiago the previous day about communications between Santiago and GP on Snapchat, including exchanges of pictures. Those pictures allegedly depicted Santiago and GP lying in bed together.

[13] *See United States v. Yusuf*, 2021 WL 4846368, at *12 (D. Utah Oct. 18, 2021) (explaining that the Fourth Amendment "does not require, as [the Defendant] suggests, that the seizing officer have probable cause that the devices seized were the same devices used in the charged offense").

[14] *See id.*

where the seizing agents acted on information that electronic communications were somehow used in furtherance of the crime."[15] Here, the law enforcement knew that electronic communications were somehow used in furtherance of the crimes, and thus, they had probable cause to seize Santiago's iPhone.

B. *Automobile Exception*

Even if the officers did not retain control of the iPhone throughout the entirety of the arrest and the relevant seizure was when Deputy Davis retrieved the iPhone from the truck, the "automobile exception" justified the seizure of the iPhone.[16] This exception permits law enforcement to search and seize items within a car without a warrant when they have "probable cause to believe that contraband is present."[17] There are two key limitations to this exception. First, a search of the entire car is not necessarily permitted—"a search is permitted only in the parts of the car where the officers could reasonably expect to find the contraband."[18] Second, in order to seize the item, it must be "immediately apparent that the seized item is incriminating on its face."[19] Since the officers knew Santiago's iPhone was on the front seat of the truck, in their plain view, a mere handful of feet away, this seizure turns on the second limitation: whether it was immediately apparent that the iPhone was incriminating on its face—"i.e., there was

---

[15] *Id.*

[16] Santiago does not contest that the automobile exception could never apply in this context. Rather, he argues that the United States has not met its burden under the exception.

[17] *United States v. Mirabel*, 876 F.3d 1029, 1033 (10th Cir. 2017).

[18] *Id.*

[19] *United States v. Corral*, 970 F.2d 719, 723 (10th Cir. 1992).

probable cause to believe it was evidence of a crime." [20] And as explained above, law enforcement had probable cause to believe that Santiago's iPhone had evidence related to his illegal sexual relationship with GP and that his phone was used in furtherance of the crimes then being alleged. Thus, even if the seizure of Santiago's iPhone was not the result of a search incident to arrest, the automobile exception provides a lawful basis for the seizure of the iPhone.

## II.   Search of Santiago's iPhone

Once the seized, the Fourth Amendment required the government to get a warrant to search the contents of Santiago's iPhone.[21] But the Fourth Amendment does not permit just any warrant. Rather, a warrant must be issued "upon probable cause" and "particularly describ[e] the place to be searched."[22] Both the state and federal government received a warrant to search Santiago's iPhone. Santiago challenges the validly of both warrants. The Court addresses each in turn.

### A.   State Warrant

Upon seizing Santiago's iPhone, state officials obtained a warrant to search the contents of the phone. Santiago argues that this warrant failed to comply with the Fourth

---

[20] *Yusuf*, 2021 WL 4846368, at *7.

[21] *Riley*, 573 U.S. at 401 ("Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest."). The United States does not argue that any exigencies existed that would justify a warrantless search. *See id*. at 401–02 ("[O]ther case-specific exceptions may still justify a warrantless search of a particular phone.").

[22] U.S. Const. amend. IV; *see United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017).

Amendment for two reasons: the warrant failed (1) the probable cause requirement and (2) the particularity requirement. The United States disagrees with both arguments. But in any event, the United States argues that the evidence obtained should not be excluded under the good-faith exception.

1. *Probable Cause*

Santiago argues that "[w]hile the affidavit in this case may have established probable cause to believe that Mr. Santiago raped or committed lewd and lascivious conduct against fourteen-year-old GP, it failed to establish probable cause that *his cell phone* contained evidence of those crimes or any other crime."[23] But as explained above, there was probable cause to believe that Santiago's iPhone was used in furtherance of the crimes of rape and lewd and lascivious acts to a minor. The affidavit set forth a detailed narrative of Santiago's sexual relationship with GP and that he sent messages relating to the relationship to GP via an app commonly used on cell phones.[24] Since the information was included in the supporting affidavit, there was probable cause for the issuance of the warrant.[25]

---

[23] Def.'s Mot. to Suppress (Dkt. 23), at 10 (emphasis in original).

[24] As explained above, it was not necessary for the affidavit to provide certainty that this particular phone was the one used in furtherance of those crimes, only that it was the type of device commonly used for such communications.

[25] *See United States v. Beck*, 139 F. App'x 950, 954 (10th Cir. 2005). Santiago argues that "[a]llegations of sexual misconduct do not categorically or independently establish a nexus to the accused's cell phone." Def.'s Mot. to Suppress (Dkt. 23), at 11. This may very well be true. But here, the nexus was not created merely by the allegations of sexual misconduct by Santiago. Rather, it was the specific evidence that Santiago used an electronic device to communicate with GP about the relationship that provided the nexus.

*2. Particularity*

The driving force behind the adoption of the Fourth Amendment was preventing overbroad warrants that authorized "unrestrained search[es] for evidence of criminal activity."[26] "The Fourth Amendment's particularity requirement ensures that [a] search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[27]

The Tenth Circuit applies to cell phones the particularity approach originally adopted to evaluate searches of computers.[28] The court has "drawn a 'recognizable line' in considering how much particularity is required for computer searches."[29] On one side of the line, the court has "invalidated warrants authorizing computer searches where [the court] could discern no limiting principle: where, for example, the warrant permitted a search of any and all information, data, devices, programs, and other materials, or all computer and non-computer equipment and written materials in [a defendant's] house."[30] On the other side, the court has made clear that "warrants may pass the particularity test if they limit their scope either to evidence of specific federal crimes or to specific types of material."[31] "To be sufficiently particular, search warrants do not have to identify specific

---

[26] *Riley*, 573 U.S. at 403.

[27] *United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021) (cleaned up).

[28] *Russian*, 848 F.3d at 1245.

[29] *Id.*

[30] *Id.* (internal quotation marks omitted).

[31] *Id.* (internal quotation marks omitted); *see, e.g.*, *Palms*, 21 F.4th at 697–700 (holding that "the crime of human trafficking" is a sufficiently specific crime such that a warrant's

statutes for the crimes to which they are limited."[32] But the warrant must limit the category of crime in some way; the warrant may not be written so as to "broadly encompass 'any crime.'"[33]

Here, the warrant authorized a search of "evidence that a crime has been or is about to be committed." On its face, the warrant does not limit the scope of the search "either to evidence of specific [] crimes or to specific types of material."[34] Rather, the warrant is far closer to the type of warrants "broadly encompass[ing] 'any crime'" that the Tenth Circuit has invalidated.[35] The United States originally argued that the warrant can be saved because, when read in context, the broad language is narrowed, particularly by the attached affidavit.[36] And since the affidavit names particular offenses under investigation, the United States argues the affidavit provides the necessary context to inform the meaning of "a crime."

While it is true that a "supporting affidavit can sometimes cure a warrant's lack of particularity," cure can only occur if two requirements are met: "(1) the warrant and the affidavit must be attached; and (2) the warrant must expressly incorporate the

---

limitation to search and seize evidence of it from a cell phone satisfied the Fourth Amendment's particularity requirement).

[32] *Id.* at 699.

[33] *Id*.

[34] *Russian*, 848 F.3d at 1245.

[35] *Palms*, 21 F.4th at 699.

[36] At the hearing on the motion, the United States backed away from this position, several times conceding that the facts of this case did not meet the "technical" requirements for a supporting affidavit curing the warrant's lack of specificity.

12

affidavit."[37] "[A] warrant does not incorporate an affidavit merely by mentioning the affidavit or reciting that the magistrate judge found probable cause to authorize the search."[38] Rather, "the search warrant must expressly refer to the affidavit *and* incorporate it by reference using suitable words of reference."[39]

Although the affidavit was attached in this case, the affidavit does not cure the lack of specificity because the warrant did not expressly incorporate the affidavit. The United States points to no language in the warrant incorporating the affidavit by reference, and it appears that no such language exists.[40] At most, the warrant makes one passing reference to the existence of the affidavit. But this passing reference is insufficient because "a warrant does not incorporate an affidavit merely by mentioning the affidavit[.]"[41]

Without incorporating the affidavit, the warrant's reference to "evidence that a crime has been or is about to be committed" in effect "told officers they could search for evidence of any crime rather than only evidence related to"[42] rape and lewd and lascivious acts to a minor. The warrant therefore failed the Fourth Amendment's particularity requirement.

---

[37] *United States v. Suggs*, 998 F.3d 1125, 1135 (10th Cir. 2021).

[38] *Id.*

[39] *Id.* (quoting *United States v. Williamson*, 1 F.3d 1134, 1136 n.1 (10th Cir. 1993)).

[40] Again, at the hearing on the motion, the United States conceded that the warrant did not incorporate the affidavit.

[41] *Suggs*, 998 F.3d at 1135.

[42] *Id.*

3. *Good-Faith Exception*

Although the search warrant failed the Fourth Amendment's particularity requirement, this constitutional infirmity does not necessarily doom the admissibility of evidence obtained in the subsequent search of Santiago's iPhone. The United States argues that the good-faith exception applies. That exception provides that the "exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid."[43] The rationale for this exception "is the underlying purpose of the exclusionary rule—namely, to deter police misconduct. When an officer acts in good faith, there is nothing to deter."[44] Thus, "the suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule."[45]

Here, the officer's "[r]eliance upon a warrant issued by a neutral magistrate creates a 'presumption . . . [that] the officer [was] acting in good faith.'"[46] But this "good-faith presumption is not absolute."[47] Rather, an "officer's reliance on the defective warrant still must be objectively reasonable."[48] "An officers reliance is objectively unreasonable when

---

[43] *Russian*, 848 F.3d at 1246.

[44] *Id.*

[45] *United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

[46] *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018) (quoting *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)).

[47] *Id.*

[48] *Russian*, 848 F.3d at 1246.

the warrant is based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"[49] "An affidavit lacks indicia of probable cause when it does not contain factual support."[50] The question is whether the affidavit is "*devoid* of factual support, not merely whether the facts they contain are legally sufficient."[51]  "An affidavit devoid of factual support is 'one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'"[52] "The affidavit does not have to be a model of specificity."[53]  Rather, "[a]n affidavit has enough factual support to justify reliance if it establishes a minimally sufficient nexus between the illegal activity and the place to be searched."[54]

    The good-faith exception applies in this case. To start, while there was an infirmity with the magistrate's particularity in the search warrant, the attached affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]"[55] The affidavit set forth a detailed narrative of Santiago's sexual

---

[49] *Chambers*, 882 F.3d at 1310 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Santiago does not argue that any of the other situations when an officer's reliance would be objectively unreasonable under *Leon* apply in this case. *See id.* at 1310 n.6.

[50] *Id*. at 1310.

[51] *Cardall*, 773 F.2d at 1133 (emphasis in original).

[52] *Chambers*, 882 F.3d at 1311 (quoting *United States v. Roach*, 582 F.3d 1192, 1204–05 (10th Cir. 2009)).

[53] *Id.*

[54] *United States v. Henderson*, 595 F.3d 1198, 1202 (10th Cir. 2010) (cleaned up).

[55] *Chambers*, 882 F.3d at 1310.

15

relationship with GP and that he communicated with her about that relationship via an app commonly used on cell phones. This narrative was not based on "mere suspicions, beliefs, or conclusions[.]"[56] Rather, it was based on testimony from multiple sources—GP, her mother, and the results of a forensic interview. And as explained above, this evidence provided officers with probable cause to believe that Santiago's iPhone was somehow used in furtherance of the crimes of rape and lewd and lascivious acts to a minor. As the affidavit explained, "Santiago's Apple iPhone was taken as evidence in this case since he used it to facilitate and transmitted videos, photos, and communicated with minor GP to arrange their encounters."[57] This was not a conclusory statement. It was supported in the affidavit by a narrative of the testimony discussed above. The affidavit therefore "establishe[d] a minimally sufficient nexus between the illegal activity" and Santiago's iPhone.[58]

Further, applying the good-faith exception is consistent with the purpose of the exclusionary rule—deterring police misconduct. Here, the constitutional deficiency arose from the magistrate's lack of specificity, not the work of law enforcement. The affidavit makes clear that law enforcement engaged in a detailed investigation prior to obtaining the search warrant and specifically tied the phone to evidence relevant to the crimes then being investigated. In this case, there is no police misconduct to deter: "Penalizing the officer for the magistrate's error, rather than his [or her] own, cannot logically contribute to the

---

[56] *Id.* at 1311 (quoting *Roach*, 582 F.3d at 1204–05).

[57] Ex. 3 (Dkt. 23), at 6.

[58] *Henderson*, 595 F.3d at 1202.

16

deterrence of Fourth Amendment violations."[59] Thus, excluding the evidence would not be appropriate.[60]

B. Federal Warrant

Santiago's only basis for challenging the federal search warrant is that it was based on information obtained in the allegedly unlawful state search that must be excluded. But having concluded that the good-faith exception applies to the state search, there is no basis for excluding evidence obtained from the federal search.

### Conclusion

Accordingly, the Court **DENIES** Defendant Santiago's Motion to Suppress (Dkt. 23).

**IT IS SO ORDERED** this 5th day of October 2022.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[59] *Leon*, 468 U.S. at 920–21.

[60] *See Riccardi*, 405 F.3d at 863 ("[T]he suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule.").